# Richmond.

## SAMUEL L. LAREW, 3RD, AND OTHERS v. SAMUEL L. LAREW, 2ND, AND OTHERS.

### November 18, 1926.

1. WILLS—*Construction—Life Estate—Devise to Wife for Life, then to Son of Testator and his Children, and if he Should Die without Surviving Heirs, then Over to Testator's Nephews and Nieces—Case at Bar.*—In the instant case a testator gave property to his wife "during her life; at her death to go" to his son, "and his children; and if he should die without surviving heirs, then" to the children of his brothers and sisters then living.

   *Held:* That this devise did not give a life estate to testator's son, with remainder to his children if any survive him.

2. WILLS—*Technical Language—Life Estate—Case at Bar.*—In the instant case the will was not drawn by one learned in the law, and both the draftsman and the testator were ignorant of the technical meaning of the language used, as construed by the courts. While this was true, it was quite evident that they both knew what a life estate was, and that the chief purpose of the will was to give his property to his wife for life, and then to his ten year old son. It was, therefore, most significant that in the devise to his wife he limited her to a life estate, but put no such limitation on the devise over to his son on her death, and the devise to the son should not by strained implication be construed to be a devise of a life estate.

3. WILLS—*Rule in Wild's Case—Limitation to A and his Children—Children in the Sense of Issue or Heirs.*—The rule in *Wild's Case* is as follows: If in a devise there be a limitation "to A and his children," and at the time of the devise A has children, A and his children take jointly as purchasers; but if at the time of the devise A has no children, then the word "children" is a word of limitation whereby A takes an estate tail and not a word of purchase whereby the children take jointly with A.

4. WILLS—*Rule in Wild's Case—Requisites—Children in the Sense of Issue of Heirs.*—In order that the rule in *Wild's Case* shall apply, (a) The limitation must be in a devise; (b) The form of the limitation must be "to A and his children," not to A for life, remainder to his children; and (c) A must have no children at the time of the devise. If all these requisites do not concur, the word "children" is not a

word of limitation, and so cannot enlarge the estate of A to a fee-tail. But when these requisites do concur, the primary sense of the word "children," which is issue of the first generation, is displaced by the rule in *Wild's Case,* and "children" becomes equivalent to "issue," as embracing all descendants to take indefinitely in succession.

5. WILLS—*Heirs—Heirs in the Sense of Heirs of his Body.*—A testator, after giving his wife property, provided that at her death the estate was to go to his son "and his children; and if he should die without surviving heirs, then" to the children of my brothers and sister then living.

*Held:* That the word "heirs," in the gift over on the son's death without surviving heirs, could not be construed to mean heirs at law, but should be construed to mean heirs of his body; that is, his son's descendants in indefinite succession; and that testator had no idea of defeating his son's title or of devising the estate to his nephews and nieces so long as any of his son's descendants and those of his own blood were in existence.

6. WILLS—*Construction—Life Estate—Devise to Wife for Life, then to Son of Testator and his Children, and if he should Die without Surviving Heirs, then Over to Testator's Nephews and Nieces—Defeasible Fee—Case at Bar.*—In the instant case a testator gave property to his wife "during her life; at her death to go" to his son, "and his children; and if he should die without surviving heirs, then" to the children of his brothers and sisters then living.

*Held:* That the devise to the son and his children should be construed as a devise to him and the heirs of his body, and so is an estate tail, which by statute in Virginia (Code of 1919, section 5150) is converted into a fee simple; this fee is a defeasible one which might be defeated upon the failure of the issue of the son.

7. WILLS—*Rule in Wild's Case—Estates Tail—Not Obsolete.*—While the rule in *Wild's Case* is ancient, it is not obsolete. Estates tail may be created in Virginia, and the statute, Code of 1919, section 5150, recognizes this, and when such estates are created the established rules still apply.

8. ESTATES TAIL—*Implication.*—While since the act of 1776 (Code of 1919, section 5150), there should be no implication of an estate tail, if it can possibly be held to be a different estate, whenever such an estate is created, it follows that by operation of the statute it is a fee.

Appeal from a decree of the Circuit Court of Frederick county. Decree for complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Robert M. Ward* and *M. M. Lynch,* for the appellants.

*R. Gray Williams* and *Harry R. Kern,* for the appellees.

PRENTIS, P., delivered the opinion of the court.

The question to be here determined is the true construction of the third clause of the will of Samuel L. Larew, Sr., hereinafter called the testator. It reads:

"3rd.   I hereby will and bequeath (after the payment of all just debts and funeral expenses which my said executor shall discharge) all my real estate (except those items directed in the first clause of my will to be sold), including the investments in real estate that shall be made by my executor under the first clause of my will, and all my household goods and all my stock and investments, including those invested by my executor under the first clause of my will, to my beloved wife, Sarah S. Larew, during her life; at her death to go to my beloved son, Samuel L. Larew, Jr., and his children; and if he should die without surviving heirs, then I direct my said executor to reduce the whole of my estate to cash and pay the same over to the children of my brothers and sisters then living, in equal shares."

The appellants, who are the grandchildren of the testator and the children of his son, Samuel L. Larew, Jr., contend for this construction of the clause:   "That the language used by the testator in his will should

be construed to give only a life estate to his son, Samuel L. Larew, Jr., with remainder in fee to his children living at the latter's death, and in the event all of his children should predecease him with remainder over (at his death) to the children then living of the testator's brothers and sisters, to the exclusion of collateral kin of Samuel L. Larew, Jr., on his maternal side."

On the other hand, the appellees' contention is that Samuel L. Larew, Jr., is the owner of a defeasible fee in the real estate devised, which fee may be defeated in case he should die without leaving issue; and that if he should die leaving issue, his issue has no title or interest whatever in such real estate, except by way of inheritance in case he should die intestate. Therefore, they claim that his children, the appellants, have no present right, title or interest in and to the estate in which he has this defeasible fee.

The trial court adopted this construction of the will and the pertinent part of the decree reads: "It appearing to the court from the record that the son of the testator, Samuel L. Larew, 2nd (complainant here), was only ten years of age and childless both at the time the testator executed the will under construction and the time of the death of the testator, the court is of the opinion that the devise 'to my beloved son, Samuel L. Larew, Jr., and his children,' created a fee tail in Samuel L. Larew, the complainant, under the old common law, which is converted by the Virginia statute into a fee simple subject to be defeated if the complainant should die without issue."

It is from this decree that this appeal was taken.

The briefs are elaborate and cite many cases in which the English and American courts have struggled

with the construction of wills and with the abstruse questions which such wills generally present. It is difficult to reconcile all of the cases, and certainly impossible to reconcile all of the expressions of the judges, but the rules to be applied in this case seem to us to be quite well settled by precedent and statute.

[1] Referring first to the contentions made for the appellants, the grandchildren of the testator, it is observed that the argument rests wholly upon the contenton that this will should be construed to give a life estate to the testator's son, Samuel L. Larew, Jr., with remainder to his children if any survive him. Reverting to the clause under consideration, it is seen that while the property is expressly given to the testator's wife for life, there is no such limitation expressed in the gift of the remainder to his son (and his children). Nor do we find any implication in any of the language used by the testator that he intended to limit his son to a life estate. The contention then that there is a devise of the remainder in fee after the death of Samuel L. Larew, Jr., to his children, clearly rests upon a mere implication, for there are no expressions indicating such a devise by way of remainder directly to his children. At the time the will was executed and at the testator's death, his son, Samuel L. Larew, Jr., was only ten years of age, and at the death of his mother, the life tenant, he was still a minor and unmarried. We do not go far afield in suggesting that it was this infant son, and not his unborn children, who was the primary object of the testator's bounty, and that he was considering the possibility of his son's early death when he directed his executor to reduce his estate to cash for the benefit

of his nephews and nieces in case of his son's death
without issue.

[2] It is said by way of argument that this will was
not drawn by one learned in the law, and that both
the draftsman and the testator were ignorant of the
technical meaning of the language used, as construed
by the courts.   While this may be true, it is also quite
evident that they both knew what a life estate was,
and that the chief purpose of the will was to give his
property to his wife for life, and then to his ten year
old son.   It is most significant that in the devise to
his wife he limited her to a life estate, but he put no
such express limitation on the remainder and the
devise to his son.

So that, for the reasons indicated and hereafter
appearing, we cannot limit the language of the will,
and by a strained implication construe it to devise a
life estate to the son, Samuel L. Larew, Jr.   This
conclusion destroys every contention made by appel-
lants, for almost without exception in the cases relied
on by them there was an express life estate vested in
the claimant of the fee in the property as against his
children   or   descendants.   *Cooper   v.   Hepburn,*   15
Gratt.   (56 Va.)   51;   *Wine v. Markwood,* 31 Gratt.
(72 Va.) 43; *Conrad v. Quinn,* 111 Va. 607, 69 S. E.
952; Graves Real Property, section 224.

What, then, was the estate devised to Samuel L.
Larew, Jr., under this clause?

This takes us first to *Wild's Case,* 6 Coke, 16 b
(s. c. *Richardson v. Yardley,* Moore 397, pl. 519), 10
Eng. R. Cas. 773, and then, if we were disposed to
follow the trail, into a morass of minute refinements
of learning so great that it dismayed Lord Eldon many
years ago, when in 1820 he said of the cases: "The

mind is overpowered by their multitude and the subtlety of distinction between them." *Jesson* v. *Wright*, 2 Bligh (21 RR. 1); *Hall* v. *Smith*, 25 Gratt. (66 Va.) 70.

Among the leading English cases applying the rule in *Wild's Case*, is *Broadhurst* v. *Morris*, 2 Barnes & Adol. 1 (36 R. R. 439), 25 Eng. R. Cas. 677. There a testator devised real estate to his daughter for life and at her death to her husband for life, and at the death of her husband, his son-in-law, he directed that the whole estate should go to his grandson, William Broadhurst, and to his children lawfully begotten, forever, and in default of such issue, at his decease, to the testator's grandson, Alexander Bridoak. It was held that his grandson, William Broadhurst, took an estate tail.

In Jarman on Wills (6th ed.), page 383 (1235), the rule in *Wild's Case* is thus defined: "The rule of construction commonly referred to as the doctrine of *Wild's Case* is this, that where lands are devised to a person and his children, and he has no child at the time of the devise, the parent takes an estate tail; for it is said: 'The intent of the devisor is manifest and certain that the children (or issues) should take, and as immediate devisees they cannot take, because they are not *in rerum natura*, and by way of remainder they cannot take, for that was not his (the devisor's) intent, for the gift is immediate; therefore, such words shall be taken as words of limitation.' "

[3, 4] In his learned and exhaustive discussion of this rule, Professor Graves, in his Notes on Real Property, section 201, page 235, says this: "This is an ancient rule of the common law, by which, under certain circumstances, the word 'children' becomes a

word of limitation, and equivalent to 'heirs of the body.' The rule in *Wild's Case* is as follows: If in a devise there be a limitation 'to A and his children,' and at the time of the devise A has children, A and his children take jointly as purchasers, but if at the time of the devise A has no children, then the word 'children' is a word of limitation whereby A takes an estate tail and not a word of purchase whereby the children take jointly with A. But in order that A may take an estate tail by the operation of this rule, these requisites must concur:

"(a) The limitation must be in a devise; (b) The form of the limitation must be 'to A and his children,' not to A for life, remainder to his children; and (c) A must have no children at the time of the devise. If all these requisites do not concur, the word 'children' is not a word of limitation, and so cannot enlarge the estate of A to a fee tail. But when these requisites do concur, the primary sense of the word 'children,' which is issue of the first generation, is displaced by the rule in *Wild's Case*, and 'children' becomes equivalent to 'issue,' as embracing all descendants to take indefinitely in succession. See *Moon* v. *Stone*, 19 Gratt. (60 Va.) 130; *Byng* v. *Byng*, 10 H. L. Cas. page 121; *Clifford* v. *Roe*, 5 App. Cas. 447; *Smith* v. *Fox*, 82 Va. 763, 1 S. E. 200; *East* v. *Garrett*, 84 Va. 523, 9 S. E. 1112."

In Minor on Real Property, Vol. 1, section 183, the rule is thus stated: "This rule is that in case of a devise 'to A and his children and their heirs,' or simply to 'A and his children,' if A has no children at the time of the devise, a fee tail is vested in A, because the intention of the testator to give the children an estate can only be effectuated by supposing that

he used the word 'children' in the sense of 'issue' or 'heirs of the body,' and so, in order to accomplish the intent, A would take an estate tail by implication such as is allowed in wills but not in deeds."

In 10 Ruling Case Law, section 14, page 658, it is said that in wills, the correct and technical words of inheritance and procreation have never been considered essential. "Any expressions in the will denoting an intention to give the devisee an estate of inheritance descendible to his, or some of his, lineal, but not collateral, heirs, have always been regarded as a sufficient devise of a fee tail. An estate tail is also created, by implication, by a conveyance or devise in fee to some particular person, with a limitation over in the event of the death of the person named without issue, or upon an indefinite failure of issue. In other words, whenever it appears in the instrument creating the estate that it was intended that the issue of the first taker should take by inheritance in a direct line, and in a regular order and course of descent, so long as his posterity should endure, and an estate in fee or in tail is given in remainder, upon an indefinite failure of issue, then the estate first created will be construed to be an estate tail."

The cases cited in support of these statements fully support the text. *Smith* v. *Pendell*, 19 Conn. 107, 48 Am. Dec. 146; *Butler* v. *Heustis*, 68 Ill. 594, 18 Am. Rep. 589; *Doty* v. *Teller*, 54 N. J. L. 163, 23 Atl. 944, 33 Am. St. Rep. 670; *Taylor* v. *Taylor*, 63 Pa. St. 481, 3 Am. Rep. 565; *Hill* v. *Hill*, 74 Pa. St. 173, 15 Am. Rep. 545; *Hertz* v. *Abrahams*, 110 Ga. 707, 36 S. E. 409, 50 L. R. A. 361; *Outland* v. *Bowen*, 115 Ind. 150, 17 N. E. 281, 7 Am. St. Rep. 720 and note; *Richardson* v. *Noyes*, 2 Mass. 56, 3 Am. Dec. 24; *Hawley* v. *North-*

*ampton*, 9 Mass. 3, 5 Am. Dec. 66; *Price* v. *Taylor*, 28 Pa. St. 95, 70 Am. Dec. 105; *Parkhurst* v. *Harrower*, 142 Pa. St. 432, 21 Atl. 826, 24 Am. St. Rep. 507; *Beilstein* v. *Beilstein*, 194 Pa. St. 152, 45 Atl. 73, 75 Am. St. Rep. 692; *Carter* v. *Couch*, 157 Ala. 470, 47 So. 1006, 20 L. R. A. (N. S.) 858.

Authorities could be greatly multiplied, and the subject is one which could be easily elaborated by garnering the learning of the past and the present, but in view of the facts of this case to do so would only be to pose as a pundit in the law and merely to state what has been so many times repeated.

[5] There is, however, in the clause to be construed another expression, which indicates that the testator never intended to limit Samuel L. Larew, Jr., to a life estate, for it is provided in the gift over that if he should die without surviving heirs, the property should go to the children of the testator's brothers and sisters, cousins of Samuel L. Larew, Jr. So that the word "heirs" cannot be construed to mean heirs at law. It is claimed by the appellants that it is a mere repetition and used to indicate the children as re- maindermen, but why limit it to this meaning when the testator has not done so? He had already referred to his son's unborn children, and so we think he here refers not to them but to the heirs of his body, for the gift over is to collateral heirs. We think that the implication is that the testator meant by the use of the word "heirs" direct descendants, the equivalent of "issue," that is, his son's descendants in indefinite succession and that he had no idea of defeating his son's title, or of devising the estate to his nephews and nieces so long as any of his son's descendants and those of his own blood were in existence.

[6] That this devise to Samuel L. Larew, Jr., and his children should be construed as a devise to him and the heirs of his body, and so is an estate tail, which by statute in Virginia (Code, section 5150) is converted into a fee simple, is clear.

No discussion of this question, however casual, would be complete without a reference to the articles by Professor Graves, "Executory Interests," 4 Va. L. Reg. 633, and "Dying Without Issue in Virginia," 5 Va. L. Reg. 67.

[7, 8] It is said for the appellants that these rules and discussions are archaic, and should not be used to defeat a testator's intention. We agree with the suggestion that they should in no event operate to defeat a testator's intention, if this can be fairly gathered from the expressions of the will, but we do not think that the conclusion indicated does defeat the intention of this testator. While the rule is ancient, it is not obsolete. Estates tail may be created in Virginia, and the statute, Code, section 5150, recognizes this, and when such estates are created the established rules still apply. While since that act (1776) there should be no implication of an estate tail, if it can possibly be held to be a different estate (*Smith* v. *Chapman*, 1 H. & M. (11 Va.) 240, 320; *Taylor* v. *Cleary*, 29 Gratt. (70 Va.) 448; *Walker* v. *Lewis*, 90 Va. 581, 19 S. E. 258), whenever such an estate is created, it follows that by operation of the statute it is a fee.

Our conclusion then is that the trial court correctly held this devise to Samuel L. Larew, Jr., to be an estate tail, which by statute is created a fee simple; and that it was also correct, because the statute so allows, in holding it to be a defeasible fee—that is, a

fee which may be defeated upon the failure of the issue of Samuel L. Larew, Jr.    (Code, section 5150.)

It is unnecessary to consider the other errors assigned which do not affect this the only question in the case in which the appellants are interested.

*Affirmed.*